REAVLEY, Circuit Judge:
 

 Kermit Wayne Williams, a Chapter 11 debtor under the Bankruptcy Code, 11 U.S. C. § 1101
 
 et seq.,
 
 sought confirmation of his reorganization plan. The bankruptcy court denied confirmation and the district court affirmed. We affirm.
 

 I
 

 On May 9, 1986, Williams filed a voluntary bankruptcy petition under Chapter 11, 11 U.S.C. § 1101
 
 et seq.
 
 His estate consisted of two primary assets: (1) interest in certain real estate, valued by Williams at $783,000; and (2) interest in 32 horses, valued by Williams at $134,300. While all of Williams’ real estate was mortgaged to various secured creditors, the horses were unencumbered.
 

 Williams filed a reorganization plan and disclosure statement with his petition. The plan divided creditors and equity interest holders into 13 classes. Significantly, class 9 was composed solely of Fidelity National Bank (now Hibernia) which held a mortgage in the original principal amount of $65,000 on certain real property, and class 12 was composed of unsecured creditors, including Fidelity which had an unsecured claim of $72,500.
 

 On May 9, Williams mailed a “Notice To All Creditors and Parties in Interest of Valuation of Property,” which stated that he proposed to value certain real property and the horses, and that the valuations proposed by him would be conclusive unless an objection was filed within 20 days. Williams valued the real estate on which Fidelity had a mortgage, at $65,000, and the horses at $134,300. Fidelity timely objected to the notice of valuation and requested that the bankruptcy court set the value of the real estate after a valuation hearing scheduled for June 4, 1986. Fidelity did not object to the value Williams had attached to the horses. On June 11, 1986, the court entered an “Order Determining Value of Property For Purposes of Confirmation” which valued the real estate at $50,000 and the horses at $134,300.
 

 The reorganization plan proposed by Williams impaired class 9 and class 12,
 
 see
 
 11 U.S.C. § 1124, and the plan was rejected by both classes pursuant to 11 U.S.C. § 1126. Section 1129(b), the cramdown provision, provides that notwithstanding a plan’s rejection by an impaired class, the court must confirm the plan if it does not discriminate unfairly, and is fair and equitable, with respect to the impaired nonac-cepting class. This requirement is met with respect to a class of unsecured claims if “the plan provides that each holder of a claim of such class receive or retain on account of such claim property of a value, as of the effective date of the plan,
 
 equal to
 
 the allowed amount of such claim.” 11 U.S.C. § 1129(b)(2)(B)® (emphasis added).
 

 
 *252
 
 In an attempt to fulfill this requirement, the plan provided that Fidelity would receive, in satisfaction of its $72,500 unsecured claim, either (1) a combination of 22 horses, valued at $60,850, and promissory notes worth $11,650; or (2) a combination of promissory notes and stock in a corporation formed by Williams which would have, as its primary asset, the 32 horses. A confirmation hearing was held on August 24, 1986, at which the primary issue was the proper value to be attached to the horses. Williams admitted that his horse business had not been profitable, the market for horses was depressed, and that it would take over a year to sell the horses. An expert for Fidelity estimated that the horses were worth half of the amount claimed by Williams ($134,300), and testified that the cost of boarding a single horse for one year would be $1,710. Therefore, while the value Williams attached to the 22 horses he proposed to give to Fidelity, under the first option of the plan, was $60,850, the cost of boarding these horses for one year, according to Fidelity’s expert, would be $37,620.
 

 On March 20, 1987, the bankruptcy court issued an order denying confirmation. In its “Reasons For Decision,” filed on October 8,1987, the court held that the plan did not meet the requirements of 11 U.S.C. § 1129(b)(2)(A) with respect to secured claims (including Fidelity’s class 9 secured claim) and that, most importantly, the plan did not meet the requirements of 11 U.S.C. § 1129(b)(2)(B)(i) with respect to unsecured claims (including Fidelity’s class 12 unsecured claim). With respect to the plan’s treatment of unsecured claims, the court found that
 

 the Debtor has not proved by a preponderance of the evidence that the property [the horses] to be distributed to the creditors has a value, as of the effective date of the plan, equal to the allowed amount of the unsecured claims. I so find for a reason that was most succinctly put by Mr. Hood in his memorandum in objection to plan confirmation; Mr. Hood wrote:
 

 “The debtor, in the instant case, is blatantly attempting to use the Bankruptcy Code to unload on his creditors, not his assets, but rather, his liabilities.”
 

 Mr. Hood’s comment is supported by the testimony that the horse operation has never really been a profitable operation and has always lost money.
 

 The court concluded that “it is not fair and equitable ... to unload junk assets on creditors while keeping worthwhile property of the estate.”
 

 On May 30, 1987, after the bankruptcy court issued its order denying confirmation but before the court filed its “Reasons For Decision” on October 8, 1987, Williams filed an appeal to the district court. Williams only challenged the court’s decision with respect to the plan’s treatment of unsecured creditors; he did not challenge the court’s holding with respect to the plan’s treatment of secured creditors. The district court affirmed the bankruptcy court’s judgment, stating that it agreed
 

 with the Bankruptcy Judge’s conclusion that the debtor ... failed to prove by a preponderance of the evidence that the property to be distributed — horses or stock in the horse corporation and promissory notes — to the creditors has a value equal to the amount of the unsecured claims as of the effective date of the plan.
 

 Williams now contends that the reorganization plan’s treatment of both secured and unsecured claims complied with § 1129(b)(2)(A) & (B)(i) and thus that the lower courts improperly denied confirmation. We do not reach Williams’ claim concerning the plan’s treatment of secured claims because he did not raise this claim before the district court.
 
 [1]
 

 See Mortga-
 
 
 *253
 

 geAmerica Corp. v. Bache Halsey Stuart Shields,
 
 789 F.2d 1146, 1150-51 (5th Cir.1986). Because of our disposition of the appeal, we forgo consideration of the question of whether Williams’ failure to pursue his claim concerning the plan’s treatment of secured claims would moot the appeal of the denial of confirmation.
 

 II
 

 Williams contends that the June 11, 1986 order, which valued the horses at $134,300, was binding on the bankruptcy court, thus preventing that court from re-examining this issue at the confirmation hearing and attaching a lower value. Alternatively, Williams argues that the district court incorrectly concluded that the horses’ value was less than the value attached by him.
 

 To support his first contention, Williams argues that Fidelity had an opportunity to object to the value he attached to the horses at the June 4, 1986 hearing, but instead only objected to the real estate valuation. Williams notes that the order entered pursuant to that hearing was entitled “Order Determining Value of Property for Purposes of Confirmation,” and contends that the values established under that order are binding.
 

 A bankruptcy court “must hold an evidentiary hearing in ruling on confirmation.”
 
 In re Acequia, Inc,,
 
 787 F.2d 1352, 1358 (9th Cir.1986). At this hearing, “[i]n addition to the consideration of objections raised by creditors, the [cjourt has a mandatory independent duty to determine whether the plan has met all of the requirements necessary for confirmation.”
 
 In re Holthoff,
 
 58 B.R. 216, 218 (Bankr.E.D.Ark.1985). We hold that, pursuant to its “mandatory independent duty” to determine whether the plan complied with § 1129(b)(2)(B)(i), the bankruptcy court properly re-examined the valuation of the horses.
 

 Williams’ contention, that the lower values attached to the horses by the bankruptcy court
 
 were
 
 not supported by the evidence, is meritless. At the confirmation hearing, Williams admitted that the market was depressed and that it would take at least one year to sell the horses. This, coupled with Fidelity’s expert’s testimony that boarding expenses for the 22 horses would equal approximately $37,620 for one year, clearly support the bankruptcy court’s conclusion that the horses did not have a value equal to the allowed amount of the unsecured creditor’s claims. We therefore hold that the bankruptcy court properly, denied confirmation.
 

 AFFIRMED.
 

 [1]
 

 . Williams contends that he did not waive this claim by not raising it below because the bankruptcy court's "Reasons For Decision” was not filed until after he had filed his notice of appeal and briefs in the district court. The bankruptcy court acknowledged that the reasons for its decision were delayed, and requested the district court to allow the parties to supplement their briefs. Because Williams did not attempt to supplement his brief to include his claim concerning the plan’s treatment of secured claims, we hold that Williams waived this claim.