**In re MAROPA MARINE SALES SER-VICE & STORAGE, INC., Debtor.**

**Bankruptcy No. 87–03519–BKC–TCB.**

United States Bankruptcy Court,
S.D. Florida.

Aug. 1, 1988.

Steven H. Friedman, Miami, Fla., trustee.

Miller Bass & Chernoff, Edward R. Miller, Naples, Fla., for debtor.

ORDER DENYING CONFIRMATION
AND CONVERTING CASE TO
CHAPTER 7

THOMAS C. BRITTON, Chief Judge.

A confirmation hearing was held May 16 on this chapter 11 debtor's plan. A Second and a Third Amended Plan were filed dur-

ing the next five weeks (CP 50, 52). Confirmation of the last plan is now denied.

The plan provides six classes. Classes 1, 2 and 6 are unimpaired.

### Rejection by Impaired Class

Class 4 has accepted the plan.[1] However, classes 3 and 5 have each rejected the plan. The debtor argues that class 3 is no longer impaired under its Third Plan. I disagree.

■ The provision for class 3 (creditors who paid in full for but did not receive their boats and motors) is:

"100% of the allowed amount of its claim payable and amortized over 20 years at 11% interest in equal monthly payments." (CP 52 at 3).

There are three statutory requirements for a class to be unimpaired. 11 U.S.C. § 1124. This provisions fails all three. The debtor relies on the third:

"on the effective date of the plan [10 days after confirmation], the holder of such claim or interest receives, on account of such claim or interest, *cash* equal to (A) with respect to a claim, the allowed amount of such claim." § 1124(3) (Emphasis added).

This plan, therefore, fails to meet the requirement of § 1129(a)(8), that it be accepted by every impaired class. It may be crammed down over the dissenting classes if, but only if, it meets the requirements of § 1129(b). The debtor made timely application for cram down. (CP 42).

### Cram Down

There are two specific alternative requirements for cram down of a plan as to a dissenting class of *unsecured* creditors:

"(i) the plan provides that each holder of a claim of such class receive or retain on account of such claim property of a value, as of the effective date of the plan, equal to the allowed amount of such claim; or

1. The certificate (CP 54) of debtor's counsel, which reflects rejection by this class, was in

(ii) the holder of any claim or interest that is junior to the claims of such class will not receive or retain under the plan on account of such junior claim or interest any property." § 1129(b)(2)(B).

The burden is on the debtor to show that the plan meets one of these requirements. This plan meets neither requirement.

### (i) Present Value

■ I find that the unsecured promise of a bankrupt company to refund to its customers the money they had paid for undelivered merchandise is *not* equal to the customers' claims, when payment is spread over the next 20 years with 11% interest. This is the provision made for class 3. *Cf. Matter of Southern States Motor Inns, Inc.*, 709 F.2d 647, 652 n. 6 (11th Cir.1983), *cert. denied*, 465 U.S. 1022, 104 S.Ct. 1275, 79 L.Ed.2d 680 (1984), (interest must be at current market rate for loan with same length of payout, quality of security, and risk of default).

■ I also find that the unsecured promise of a bankrupt company to pay half of the creditor's unsecured claim spread over the next eight years without interest is *not* equal to the creditor's claim. This provision made for the only creditor in class 5 makes no pretense of meeting the requirement of subparagraph (i).

### (ii) Absolute Priority Rule

■ I find that class 6, the stockholders, are a class junior to the two impaired classes and that they will retain property under the plan.

It is now settled beyond dispute that: "Even where debts far exceed the current value of assets, a debtor who retains his equity interest in the enterprise retains 'property'." *Norwest Bank Worthington v. Ahlers*, —— U.S. ——, 108 S.Ct. 963, 99 L.Ed.2d 169 (1988).

If "the Los Angeles Lumber exception" to the absolute priority rule survives the present codification of the rule in

error and has been disregarded.

§ 1129(b)(2)(B)(ii), a point noted [2] but not decided in *Ahlers*, which I doubt, I find that the contribution to be made under this plan by the four shareholders is not the "reasonable equivalent in view of all the circumstances" to the stockholders' retention of control and entitlement to future dividends.

The contribution they are making is $50,000 plus a guarantee (up to $50,000) of the payments required for classes 3 and 4, but not 5, during the first year of this 20–year plan. They are borrowing this money from a third party. There is no evidence that this commitment equals the value of their stock.

Cram down is, therefore, denied.

### Defective Classification of Creditors

■ There is another fatal defect in this plan. I refer to it separately, because I suspect that this defect, unlike those pointed out above, could be cured by another amended plan.

The debtor has placed its unsecured creditors in three separate classes, treating each class differently. The basis for this classification is "the degree they have been damaged by the debtor's actions and the nature of the claim." (CP 52 at 4).

Chapter 11 requires that all unsecured claims of a similar nature be treated identically unless a separate class of small claims is provided "for administrative convenience". § 1122(b). The disparate treatment provided for unsecured creditors in classes 3, 4 and 5 cannot be justified for administrative convenience.

The failure of the plan to comply with the requirement of § 1122 results in the plan's failure to satisfy § 1129(a)(1). Since cram down is not available for plans which fail to meet more than one requirement of § 1129(a), this defect is fatal to the request for cram down.

### Feasibility

■ There is, finally, yet another fatal defect in this plan. It is the debtor's burden to prove that confirmation "is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor." § 1129(a)(11). That finding is not justified here.

Apart from the limited new capital referred to above, which merely assures the first year's survival, this 20–year plan rests entirely on future profits. I have not been persuaded that the debtor's future prospects can support this plan.

### Absence of Written Objections

■ Although six creditors with claims totalling $103,141 rejected this plan (CP 54), there are no written objections to confirmation.[3] From this fact, the debtor appears to argue that this court should look no further and should confirm the plan. (CP 51). I cannot agree.

Although this court's order fixed a deadline for the filing of written objections to confirmation (CP 22), neither that Order, nor any statute, nor any rule relieves this court of its responsibility to the creditors who rejected this plan to determine the entitlement of this plan to confirmation.

In *Matter of Williams*, 850 F.2d 250, 253 (5th Cir.1988), the court held:

"in addition to the consideration of objections raised by creditors, the court has a mandatory independent duty to determine whether the plan has met all of the requirements necessary for confirmation."

### Conversion

■ This case has been pending almost a year. The debtor has been unable to get the support of its creditors required by § 1126(c) after submitting three plans. It has now been denied cram down.

On average, this court receives over seven chapter 11 cases a week. In fairness to

---

**2.** 108 S.Ct. at 967 n. 3.

**3.** Written objections, filed by the same creditors, to confirmation of the First (CP 39) and the Second (CP 49) Amended Plans, have been withdrawn. (CP 53).

the other cases, the court cannot devote unlimited time to one. This debtor has had a reasonable opportunity to attempt reorganization and has failed. This case is converted to chapter 7. Steven H. Friedman is appointed interim trustee.