In re Bill Madison GREEN, Debtor.

CARSON NUGGET, INC., W.H. and Alice Adams and Alan H. Adams, Appellants,

v.

Bill Madison GREEN, Appellee.

BAP No. NV–88–1022–MePeV.

Bankruptcy No. 86–00363.

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Submitted Without Oral Argument, Sept. 12, 1988.*

Decided April 27, 1989.

Before MEYERS, PERRIS and VOLINN, Bankruptcy Judges

OPINION

PER CURIAM:

I

This case arises from an order confirming Debtor's Chapter 11 plan. The Court confirmed the Plan over creditor objections that the plan allowed Debtor to retain an equity interest despite the fact that unsecured creditors received less than the full amount of their claims. We REVERSE and REMAND.

II

FACTS

From 1960 until 1985, the Debtor was involved with a motel, casino, restaurant and convention facility called the Carson Nugget, ultimately as a partner. In 1985, the partnership deteriorated and the Carson Nugget, Inc. ("Nugget") sued the Debtor, obtaining a default judgment for $1,757,477.04 with 12% interest. After the Debtor filed for Chapter 11 relief on March 31, 1986, the Nugget filed a proof of claim for the judgment. Other claims, some of which are acknowledged as unsecured, total $342,506.12.

The Debtor then commenced suit against the Nugget in which he prayed for damages in excess of $4,000,000. Most of the defendants named in the Debtor's suit also hold unsecured claims against the estate.

The Debtor sought confirmation of his First Amended Plan of Reorganization on December 21, 1987. The plan provided that the Debtor would retain a 50% interest in the outcome of the suit he filed. The other

* The Panel finds this case appropriate for submission without oral argument pursuant to Ninth Circuit BAP Rule 3 and Bankruptcy Rule 8012.

982

50% was to be distributed pro rata to Class 3 unsecured creditors. Class 3 unsecured creditors would also receive distribution from other estate assets as they were liquidated.

Class 3 unsecured creditors did not accept the First Amended Plan. The plan was again amended to include language which provided that the Debtor would retain, free of the claims of creditors, not more than 50% of any recovery from litigation with the Nugget, after any offset and payment of litigation fees and expenses. The amount to be retained by the Debtor was to be determined by the Court to be commensurate with the service provided by Debtor "due to a substantial contribution in time and effort necessary for the effective prosecution of such claim."

Although Debtor's creditors took exception to Debtor retaining any interest in the litigation, the trial court confirmed Debtor's plan as amended under the cramdown provision of 11 U.S.C. § 1129(b).

### III

### DISCUSSION

The question presented is whether a Chapter 11 plan of reorganization may be confirmed under the cramdown provision of Section 1129(b), where the terms of the plan permit the debtor to retain rights to property in return for future services, but objecting creditors are not assured of full repayment.

No Chapter 11 plan for reorganization that fails to comply with the long-standing "absolute priority rule" incorporated into the Bankruptcy Code in Section 1129(b)(2)(B)(ii) may be confirmed without the approval of creditors. Subsequent to the confirmation hearing, the Supreme Court held that the absolute priority rule gives a dissenting class of unsecured creditors the right to be provided for, in full, before any junior class may receive or retain any property under a reorganization plan. *Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 108 S.Ct. 963, 966, 99 L.Ed.2d 169 (1988). Although there is a recognized exception to the "absolute prior-

ity rule" in instances where the junior class provides the estate with "money or money's worth" under the plan, the mere promise of future services is alone insufficient. 108 S.Ct. at 967. *See also Case v. Los Angeles Lumber Products Co.*, 308 U.S. 106, 121–23, 60 S.Ct. 1, 10–11, 84 L.Ed. 110 (1939).

> Viewed from the time of approval of the plan, respondents' promise of future services is intangible, inalienable, and, in all likelihood, unenforceable. It "has no place in the asset column of the balance sheet of the new (entity)." *Los Angeles Lumber, supra*, at 122–123, 60 S.Ct. at 11. Unlike "money or money's worth," a promise of future services cannot be exchanged in any market for something of value to the creditors today. In fact, no decision of this Court or any Court of Appeals, other than the decision below, has ever found a promise to contribute future labor, management, or expertise sufficient to qualify for the *Los Angeles Lumber* exception to the absolute priority rule.

*Norwest Bank Worthington v. Ahlers, supra*, 108 S.Ct. at 967.

The plan confirmed in this case grants the Debtor the right to apply for up to 50% of any recovery from a lawsuit being pursued against the Nugget. Although payment is to be made at the Court's discretion, the plan contains no undertaking to assure payment in full to unsecured creditors.

The plan at issue is clearly in violation of the absolute priority rule. The order confirming the plan must, therefore, be reversed and remanded to the trial court for further proceedings consistent with the Supreme Court decision in *Ahlers*. *See also Matter of Stegall*, 865 F.2d 140 (7th Cir. 1989); *In re Rudy Debruycker Ranch, Inc.* 84 B.R. 187, 190 (Bkrtcy.D.Mont.1988); *In re Maropa Marine Sales Service & Storage, Inc.*, 90 B.R. 544, 546 (Bkrtcy.S.D.Fla. 1988).

**REVERSED and REMANDED.**