**In the Matter of GREYSTONE III JOINT VENTURE, Debtor.**

**PHOENIX MUTUAL LIFE INSURANCE COMPANY, Appellant,**

**v.**

**GREYSTONE III JOINT VENTURE, Appellee.**

**Civ. A. Nos. A–89–CA–667, A–89–CA–842.**

United States District Court, W.D. Texas, Austin Division.

July 31, 1990.

John Flowers, Neil L. Sobol, Dallas, Tex., for appellant Phoenix Mut. Life Ins. Co.

Adrian M. Overstreet, Kammerman & Overstreet, Austin, Tex., for appellee Greystone III Joint Venture.

### ORDER

WALTER S. SMITH, Jr., District Judge.

This is an appeal from a final order of the United States Bankruptcy Court for the Western District of Texas, Austin Division (Clark, J.).

## I. *Statement of Issues and Standard of Review*

Phoenix Mutual Life Insurance Company ("Phoenix Mutual" or the "Appellant") presents the following issues:

1. Did the Bankruptcy Court err in permitting the Debtor to separately classify the unsecured trade creditors' claims from Phoenix Mutual's unsecured deficiency claim?

2. Did the Bankruptcy Court err in holding that the Modified Plan does not violate the absolute priority rule?

3. Did the Bankruptcy Court err in confirming the Modified Plan without requiring new disclosure to the Trade Creditor Class?

Under Bankruptcy Rules 7052 and 8013, the Bankruptcy Judge's findings of fact must be upheld on appeal unless "clearly erroneous." *In re Beker Industries Corp.*, 89 B.R. 336, 342 n. 5 (S.D.N.Y.1988); *In re Silver*, 46 B.R. 772 (D.Col.1985). However, the Bankruptcy Judge's conclusions of law are reviewed *de novo. Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303 (5th Cir.1985).

## II. *Statement of Facts and Statement of the Case*

Greystone III Joint Venture (the "Debtor" or the "Appellee") is a Texas joint venture composed of Gerald D. Kucera, Greystone Bank Building Partnership and Greystone III, Ltd. The Debtor was formed on August 30, 1983 for the purpose of developing an office building located in Austin, Texas. This project is the Debtor's primary asset.

Phoenix Mutual is the owner and holder of a promissory note (the "Note") in the original principal amount of $8.8 million, executed by the Debtor, dated September 17, 1985, and due to Phoenix Mutual. The Note is secured by a deed of trust mortgage and assignment of rents covering the Project.

On April 4, 1988, the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. On June 13, 1988, the Debtor filed a Plan of Reorganization and a Disclosure Statement. On September 7, 1988, the Debtor filed its First Amended Plan of Reorganization and its First Amended Disclosure Statement. On September 28, 1988, the Debtor filed its Second Amended Plan of Reorganization (the "Plan") and its Second Amended Disclosure Statement (the "Disclosure Statement"). Also on September 28, 1988, the Bankruptcy Court conducted a hearing at which the Disclosure Statement was approved.

On October 31, 1988, the Bankruptcy Court conducted a hearing on the propriety of the classification of claims under the Plan and on the valuation of Phoenix Mutual's secured claim under Section 506(a) of the Code. The aggregate amount of pre-petition indebtedness owed to Phoenix Mutual totals $9,300,773.60. The Court set the value of the project at $5,825,000 for purposes of confirmation of the Plan. Therefore, pursuant to 11 U.S.C. §§ 506(a) and 1111(b), Phoenix Mutual has a secured claim of $5,825,000.00 and an unsecured claim of approximately $3,500,000.00.

The Court approved the classification scheme of the Plan, except that the Court required that two classes of unsecured creditors, Classes 5 and 6, be considered together for balloting. Objections to the Plan were filed by Phoenix Mutual and the United States Trustee ("Trustee").

On January 27, 1989, the Bankruptcy Court held a confirmation hearing on the Plan, at which the Debtor orally modified the Plan to satisfy certain objections of Phoenix Mutual and the Trustee and to clarify the Plan.

As previously noted, Phoenix Mutual's claims were placed within different classifications under the Plan, part secured and part unsecured. The secured claim of Phoenix Mutual is contained in Class 4, and provides that Phoenix Mutual would receive the value of its secured claim at a market interest rate in 360 monthly installments. The Court, as previously noted, found the amount of the secured claim to be $5,825,000, and the parties stipulated that 11 percent was a market interest rate. At the confirmation hearing, the Plan was

modified to provide for a balloon payment after ten years.

The Plan confirmed by the Bankruptcy Judge separately classifies but identically treats the unsecured claims of Phoenix Mutual and the unsecured claims of trade creditors whose claims aggregate less than $10,000 ("Classes 5 and 6" or the "Trade Creditor Class"). The unsecured claim of Phoenix Mutual was placed into Class 7, as a non-recourse deficiency claim. The Plan provided that Phoenix Mutual would receive "$200,000 (or 3.82%)" in cash on the effective date of the Plan. The Plan further provides that Class 5/6 would be paid 3.82 percent of their claims in cash upon the effective date of the Plan.

Phoenix Mutual rejected the Plan as both a secured and an unsecured creditor and did not elect treatment under 11 U.S.C. § 1111(b)(2). The Trade Creditor Class accepted the Plan. At the Confirmation Hearing, a representative of Phoenix Mutual testified that Phoenix Mutual was willing to fund a reorganization of the Debtor that would pay all unsecured claims in full. The Bankruptcy Judge refused to permit Phoenix Mutual to file its plan of reorganization for the Debtor.

On June 6, 1989, the Bankruptcy Court entered its Decision on Confirmation of Debtor's Second Amended Plan of Reorganization, as modified, overruling Phoenix Mutual's objection and confirming the modified plan using the "cram down" provisions of the Code. An Order of Confirmation was entered on August 8, 1989. It is from this confirmation that Phoenix Mutual appeals.

### III. *Discussion*

A. Classification of Claims. The Appellant argues that the Bankruptcy Court erred in separating Phoenix Mutual's unsecured deficiency claim from that of the claims of the other unsecured trade creditors, asserting that there should have been only one class of unsecured claims allowed under the Plan.

Sections 1122 and 1123 of the Code require that a plan of reorganization designate classes of claims. Section 1123 provides in pertinent part:

(a) [A] plan shall—

(1) designate, subject to section 1122 of this title, classes of claims, other than claims of a kind specified in section 507(a)(1), 507(a)(2), or 507(a)(7) of this title, and classes of interests; ....

The Code expressly contemplates multiple classes of claims. Section 1122 gives the Debtor substantial freedom to establish classes of claims and provides:

(a) Except as provided in Subsection (b) of this Section, a plan may place a claim or an interest in a particular class only if such claim or interest is substantially similar to the other claims or interests of such class.

(b) A plan may designate a separate class of claims consisting only of every unsecured claim that is less than or reduced to an amount that the court approves as reasonable and necessary for administrative convenience.

The manner in which claims are classified can impact confirmation of a plan. A plan may be confirmed under Section 1129(a) of the Code if all classes of creditors accept the Plan by the requisite majorities and certain other requirements are satisfied. However, if all of the classes of creditors do not consent, a plan may be confirmed under Section 1129(b) of the Code, the so-called "cram down" section, if at least one impaired non-insider class of creditors votes to accept the plan and the other relevant standards of Sections 1129(a) and (b) are met. Only the classes of creditors whose rights are impaired under a plan of reorganization are entitled to vote to accept or reject the plan. 11 U.S.C. § 1126. Voting on a plan is by the classes as established in the plan. A class accepts a plan when two-thirds in dollar amount and more than one-half in number of the creditors in such class vote to accept the plan. 11 U.S.C. § 1126(b).

Phoenix Mutual complains that the classification of its unsecured deficiency claim in a class separate from that of the unsecured trade creditors was structured purposely by the Debtor in order to nullify Phoenix Mutual's voting rights.

Section 1122 of the Code prohibits the grouping of dissimilar claims in the same class. Although Section 1122 does not specifically address the permissibility of placing similar claims in different classes, the pertinent legislative and case authority support such a flexible approach. *See In re U.S. Truck Co., Inc.,* 800 F.2d 581, 585 (6th Cir.1986).

> Section 1122 allows a claim or interest to be placed in a particular class only if such claim is substantially similar to the other claims or interests of such class. It does not require that similar classes be grouped together but merely that any group be homogeneous.

> We find unpersuasive the current line of cases that hold Congress intended all unsecured claims of a similar nature to be grouped within one class unless a separate classification is established under Section 1122(b) A critical review of those cases attempts to create a statutory requirement where none exists and a reliance on pre-code law and Act statutory requirements.

*In re Ag Consultants Grain Division, Inc.,* 77 B.R. 665, 674 (Bankr.N.D.Ind.1987) (citations omitted). *See also, Matter of Jersey City Medical Center,* 817 F.2d 1055, 1060–61 (3rd Cir.1987); *Barnes v. Whelan,* 689 F.2d 193, 201 (D.C.Cir.1982).

Of course "the classification in a plan should not do substantial violence to any claimant's interest." *Brinkley v. Chase Manhattan Mortgage and Realty Trust (Matter of LeBlanc),* 622 F.2d 872, 879 (5th Cir.1980).

> The plan should not arbitrarily classify or discriminate against creditors. The fact that bankruptcy courts are courts of equity, however, allows exceptions to any strict rules of classifications of claims. A bankruptcy court can permit discrimination when the facts of the case justify it.

*Id.*

As noted, Phoenix Mutual claims that the classification was arranged for the purpose of denying its voting rights and, as such, is in violation of the "good faith" requirement of Section 1129(a)(3). So long as a plan is proposed with the legitimate and honest purpose to reorganize and is not *otherwise* prohibited by law, it is a plan which satisfies this section. *Matter of Sun Country Development, Inc.,* 764 F.2d 406, 408 (5th Cir.1985).

The Bankruptcy Judge is, of course, in the best position to determine whether a particular classification is made in "good" or "bad" faith. In the present case, Judge Clark determined that the classification was proper because the legal "nature" of Phoenix Mutual's deficiency claim was different from that of the trade creditors, and that separate treatment was justified for good business reasons. These factual findings by the Bankruptcy Court are not clearly erroneous, nor has the Court discovered any error of law. Accordingly, the Appellant's first ground of error is overruled.

■ B. Absolute Priority Rule. As previously noted, two alternatives under the Code exist for the confirmation of a plan: confirmation under Section 1129(a) and confirmation under Section 1129(b). If an impaired class of claims votes to reject a plan, then the plan can only be confirmed pursuant to the provisions of Section 1129(b). *See* 11 U.S.C. § 1129(a)(8). In this regard, Section 1129(b) provides, in pertinent part:

> (b)(1) Notwithstanding section 510(a) of this title, if all of the applicable requirements of subsection (a) of this section other than paragraph (8) are met with respect to a plan, the court, on request of the proponent of the plan, shall confirm the plan notwithstanding the requirements of such paragraph if the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan.

The absolute priority rule

> "provides that a dissenting class of unsecured creditors must be provided for in full before any junior class can receive or retain any property [under a reorganization] plan." The rule had its genesis in judicial construction of the undefined requirement of the early bankruptcy stat-

ute that reorganization plans be "fair and equitable." The rule has since gained express statutory force, and was incorporated into Chapter 11 of the Bankruptcy Code adopted in 1978. Under current law, no Chapter 11 reorganization plan can be confirmed over the creditors' legitimate objections (absent certain conditions not relevant here) if it fails to comply with the absolute priority rule.

*Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 108 S.Ct. 963, 967, 99 L.Ed.2d 169 (1988).

An exception to this rule developed which allowed confirmation of a reorganization plan over a creditor's objections when there has been an "infusion-of-'money-or-money's-worth'" by a junior interest holder. *Case v. Los Angeles Lumber Products Co.*, 308 U.S. 106, 60 S.Ct. 1, 84 L.Ed. 110 (1939). The Appellant argues that the *Case* exception has been replaced by the 1978 amendments to the Code, specifically by Section 1129(b) which provides that an interest holder may not receive or retain any interest under a plan unless senior claimants are paid in full. The Appellant further argues that the continued vitality of the exception has been questioned by the Supreme Court in *Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 108 S.Ct. 963, 99 L.Ed.2d 169 (1988).

The Court agrees with the Bankruptcy Judge's determination that the *Case* exception remains vital. Neither the Code nor the Supreme Court has expressly repudiated the exception. The "fair and equitable" standard was incorporated into the Code when adopted in 1978. As cited above, Section 1129(b)(1) specifically refers to confirmation when the plan "does not discriminate unfairly, and is *fair and equitable* with respect to each of class of claims or interests that is impaired...."

The *Norwest* court expressly declined to make a determination as to whether the *Case* exception had been overruled by the 1978 passage of the Code. *Norwest Bank Worthington v. Ahlers, supra,* 108 S.Ct. at 967, n. 3. The case authority prior to the *Norwest* opinion weighed in favor of the

survival of the contribution exception. *See In re Green*, 98 B.R. 981 (9th Cir. BAP 1989); *Matter of Yasparro*, 100 B.R. 91 (Bankr.M.D.Fla.1989); *In re Snyder*, 99 B.R. 885 (Bankr.C.D.Ill.1989); *In re Henke*, 90 B.R. 451 (Bankr.D.Mont.1988). *Contra, In re Winters*, 99 B.R. 658 (Bankr.W.D. Penn.1989).

Additionally, the equitable considerations that mandated the creation of this exception have not diminished. The rule is a logical extension of the notion that an equity reorganization should, in all respects, be "fair and equitable".

> Circumstances may exist where the success of an undertaking requires that new money be furnished and where the former stockholders are the only or more feasible source of the new capital. In such instances, the court may recognize as fair and equitable a plan which includes contributions of new money by stockholders, provided it satisfactorily appears that full recognition has been given to the value of the creditors' claims against the property.

*Case v. Los Angeles Lumber Products Co.,* 308 U.S. 106, 121 n. 15, 60 S.Ct. 1, 10 n. 15, 84 L.Ed. 110, *quoting In re Dutch Woodcraft Shops*, 14 F.Supp. 467, 471, 30 Am. Bankr.Rep. 351 (D.C.Mich.1935).

As the Court has determined that the Bankruptcy Court did not err in applying the exception to the absolute priority rule, the question becomes whether the exception was correctly applied.

The *Case* exception serves the narrow purpose of affording the debtor the capital necessary to survive, and should be narrowly and precisely applied. There must be a rigorous showing that the cash infusion is necessary under the circumstances and is substantial. *Case v. Los Angeles Lumber Products Co.*, 308 U.S. at 121, 60 S.Ct. at 10. This is essential in order to assure that a debtor's equity holders will not eviscerate the absolute priority rule by means of gratuitous, token cash infusions proposed primarily to "buy" cheap financing. *Group of Institutional Investors v. Chicago, Milwaukee, St. Paul & Pacific*

*Railroad Co.*, 318 U.S. 523, 570, 63 S.Ct. 727, 751–52, 87 L.Ed. 959 (1943).

In the present case, the debtor's general partners proposed to advance $500,000 in additional cash. The Appellant does not dispute that the $500,000 cash infusion is substantial; rather, the Appellant argues it is not necessary. Appellant argues that the contribution of new money must be "essential to the success of the undertaking," and that to be essential, there must be no other sources of funding. Phoenix Mutual offered to advance $155,000 to pay off the unsecured creditors and complete tenant "finishing out" obligations, and argues, therefore, that the old interest holders' contribution is unnecessary.

The Court does not agree that there must be no other source of funding before the exception applies. The authority cited by Appellant does not support its contention that the former stockholders be the *only* source from which additional funding is to come. In the *Case* opinion, as cited by Appellant, the Court notes:

Circumstances may exist where the success of an undertaking requires that new money be furnished and where the former stockholder are the only *or most feasible source* of the new capital.

*Case*, 308 U.S. at 121, n. 15, 60 S.Ct. at 10, n. 15 (emphasis added). Similar language is used in the Seventh Circuit case cited by Appellant:

... if the creditors challenge a plan as not "fair and equitable" because the new capital is not necessary *or the shareholder is not the most feasible source,* then the court must make such a finding....

*Official Creditors' Committee v. Potter Material Service, Inc. (In re Potter Material Service, Inc.),* 781 F.2d 99, 102 (7th Cir.1986).

The opinion of the Bankruptcy Judge establishes that the most feasible source of funding was from the current owners of the partnership, rather than from Phoenix Mutual. This factual determination is not clearly erroneous, and Appellant's second ground of error is without merit.

C. Requirement of New Disclosure to the Trade Creditor Class. The Appellant asserts that the Bankruptcy Court erred in confirming the Modified Plan without requiring new disclosure to the Trade Creditor Class, apparently on the basis that the Trade Creditor Class was the only impaired class which could vote to accept the plan.

At the confirmation hearing, the Debtor orally offered to modify the Plan to remove the requirement of payment of the balance of the trade claims by the general partner within thirty days of confirmation. The effect of the modification was that the Modified Plan no longer promised that the Trade Creditor Class would be fully paid on the effective date and that the Trade Creditor Class would only receive 3.82% on their claims under the Modified Plan. The Bankruptcy Judge allowed the oral modification and directed the Debtor to resolicit and provide disclosure of its Modified Plan, since the modification represented a "substantial modification" to the Plan. However, the opinion and order by the Bankruptcy Judge confirming the Plan does not refer to the requirement of resolicitation or new disclosure.

Section 1129(a) provides in pertinent part:

(a) The court shall confirm a plan—

(10) If a class of claims is impaired under the plan, at least one class of claims that is impaired under the plan has accepted the plan, determined without including any acceptance of the plan by any insider.

Appellant argues that as Phoenix Mutual's claims are impaired, the Plan should not have been confirmed as the Debtor failed to obtain the acceptance of at least one impaired class of creditors, exclusive of insiders. The basis of Appellant's argument is that Classes 4, 5, 6, and 7 were the only potential impaired classes for purposes of § 1129; that Phoenix Mutual was the only creditor in Classes 4 and 7 and rejected the Plan; and that Class 5/6 was not impaired within the meaning of § 1124.

Appellee asserts that Class 5/6 was impaired both before and after the modification and that it was not the only possible class which could have voted to accept the

**144**

plan as Class 2 was also an impaired accepting class. Appellee argues further that Appellant has no standing to assert this ground of error and that the Bankruptcy Judge's determination that no further disclosure was required was not clearly erroneous.

 The record indicates that Class 2, the class of tenant security deposits, was also an impaired class of claims which did vote to accept the Plan. Class 2 was not an "artificial class", as alleged by Appellant, but had actual "claims" against the Debtor which were "impaired", as those terms are defined in the Bankruptcy Code. Section 101(4) defines a claim as:

> (a) Right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or
>
> (b) Right to an equitable remedy for breach of performance if such breach give rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

Section 1124 defines when a claim is impaired, and provides, in pertinent part:

> Except as provided in section 1123(a)(4) of this title, a class of claims or interests is impaired under a plan unless, with respect to each claim or interest of such class, the plan—
>
> (1) leaves unaltered the legal, equitable, and contractual rights to which such claim or interests entitles the holder of such claim or interest;
>
> (2) ..., or
>
> (3) provides that, on the effective date of the plan, the holder of such claim or interest receives, on account of such claim or interest, cash equal to—
>
> > (A) with respect to a claim, the allowed amount of such claim....

Because the Plan guarantees only payment of 75 percent of the deposits paid to Debtor pre-petition, it does not leave unaltered the legal, equitable and contractual rights to which the deposit holders were entitled.

Therefore, Class 2 was an impaired class within the meaning of the Code and the acceptance by Class 5/6 was unnecessary.

Additionally, the Bankruptcy Judge's implied finding that no further disclosure was required has not been established to have been clearly erroneous. Accordingly, Appellant's third ground is also without merit.

In light of the foregoing, it is ORDERED that the opinion of the Bankruptcy Court is hereby AFFIRMED.