**In re F.A.B. INDUSTRIES, a California General Partnership, Debtor.**

**No. CV 92–5180 WJR.**

United States District Court,
C.D. California.

Nov. 24, 1992.

Bennett L. Silverman, Marjorie E. Lewis, Deborah S. Feinerman, Gibson, Dunn & Crutcher, Los Angeles, Cal., for Secured Creditor, The Prudential Ins. Co. of America.

Hushmand Schaili, Gerald P. Fox, Kaye, Scholer, Fierman, Hays & Handler, Los Angeles, Cal., Richard M. Pachulski, Jeremy V. Richards, Jeffrey N. Pomerantz, Pachulski, Stang, Ziehl & Young, P.C., for F.A.B. Industries, debtor.

## MEMORANDUM AND ORDER

REA, District Judge.

This action came on for hearing October 2, 1992, before the Court, the Honorable William J. Rea presiding, on Appellant and Debtor F.A.B. Industries' appeal from the United States Bankruptcy Court for the Central District of California. After full consideration of the authorities submitted by the parties, and oral argument of counsel, the Bankruptcy Court's order granting Prudential Insurance Company of America's relief from the automatic stay is hereby reversed, and the instant action is remanded to the Bankruptcy Court for further proceedings in connection with relief from the stay motion consistent with the instant memorandum decision.

The issue presented to the Court is whether the "new value" exception to the absolute priority rule ever existed, and if so, whether it was abolished by the enactment of the 1978 Bankruptcy Code.

## I. BACKGROUND

The Debtor F.A.B. Industries ("F.A.B.") is a California general partnership. The general partners of the Debtor are the Cohen Family Trust and the Torrino Family Trust (the "General Partners"). Each General Partner owns a 50% general partnership interest in the Debtor. The Debtor's principal asset is a medical and office building complex consisting of nine buildings and a two-level parking structure located in Torrance, California ("the Property").

In November 1986, Debtor entered into a loan with Prudential Insurance Company ("Prudential") for the principal sum of $44 million dollars. The loan is secured by a

first lien deed of trust encumbering the "Property." The Debtor made payments on the note from November 1986 through November 1991. After attempted negotiations to restructure the note proved useless, Prudential declared the loan in default in December of 1991, and subsequently commenced foreclosure proceedings by recording its notice of default under its deed of trust on January 17, 1992.

The Debtor then filed a Chapter 11 proceeding in February, 1992. Pursuant to the Bankruptcy Code 11 U.S.C. § 362 an automatic stay goes into effect, which prevents creditors from foreclosing on property of the bankruptcy estate without a court order. In May of 1992, Prudential moved for relief from the automatic stay. Prudential's argument was based on 11 U.S.C. § 362(d)(2), which provides that a party may move for relief from an automatic stay with respect to a stay against property if the Debtor does not have an equity interest in the property, and the property is not a necessary part of the reorganization.[1]

On June 10, 1992 the Debtor filed a plan of reorganization ("the Plan"). Prudential argued on various grounds that the Debtor's Plan could not be confirmed. The bankruptcy court granted Prudential's motion for relief from the automatic stay. The bankruptcy court held the Debtor's Plan could not be confirmed because it violated the absolute priority rule.

The Debtor's Plan proposes to infuse $2 million dollars into the reorganized property in return for an interest in the property equivalent to the new value. In addition, it proposes to reduce Prudential's lien and secured debt from $44 million to the value of collateral of $29.5 million. With respect to Prudential's deficiency, the Plan proposes to give Prudential an unsecured, nonrecourse note in the amount of $12.5 million. With respect to unsecured claims,

other than Prudential's, the Plan proposes to pay all creditors in full in cash over a period of 12 months.

The Plan permits "the insiders" to buy into equity of a new partnership with a priority over Prudential's note. According to the Debtor, "the Plan provides that the General Partners' equity interests in the Debtor would be cancelled and that new Reorganized FAB Limited Partnership would own the Property."

On August 21, 1992, the Debtor filed its Notice of Appeal of the Order and filed its emergency motion for a stay pending appeal with the Ninth Circuit Bankruptcy Appellate Panel. On August 22, 1992, Prudential filed its objection to disposition of the motion or the appeal by the Bankruptcy Appellate Panel and the motion and appeal were transferred to this Court.

On August 28, 1992 the Court conducted a hearing on the Emergency motion to stay the proceedings. The Court set an expedited briefing schedule. The matter came on for hearing on October 2, 1992.

## II. DISCUSSION

### A. *Disposition of the Case in Bankruptcy Court*

The bankruptcy court without a written opinion granted Prudential's motion for relief from the provisions of the automatic stay. The bankruptcy court adopted Findings of Fact and Conclusions of Law which included, *inter alia,*

> [A]lthough Prudential raises several arguments why the Debtor's Plan is not confirmable, the Court is relying on, and only expresses an opinion, as to one of those grounds. Specifically, the Debtor's Plan is not confirmable solely because it relies on the existence of the "new value" exception to the absolute priority rule.... While the Court believes that

---

1. Prudential is entitled to relief from the automatic stay if (a) the debtor does not have equity in the property, and (b) the property is "not necessary to an effective reorganization." 11 U.S.C. § 362(d). Since F.A.B. concedes that it has no equity in the Property, Prudential's right to relief from the stay depends on whether or not the Property is "necessary to an effective

reorganization." Property as to which a plan or reorganization is not confirmable, is, by definition, "not necessary to an effective reorganization" for purposes of relief from the automatic stay. *See In re Outlook/Century Ltd.,* 127 B.R. 650, 652 (Bankr.N.D.Cal.1991), *citations omitted.*

the Plan is unconfirmable because it relies on the validity of the "new value" exception, the Court believes that Prudential's other arguments that additional legal deficiencies in the Plan would bar confirmation of the Plan are factual in nature and would need to be resolved at a confirmation hearing of the Plan. *See* Appellant's Appendix, Ex. 3, p. 33. It is clear that Judge Fenning only reached the issue of the "new value" exception, and did not address Prudential's other concerns.

### B.  Standard of Review

The issue before the Court in the instant appeal is a question of law and thus subject to *de novo* review. *Kupetz v. United States Department of Education (In re California Trade Technical Schools, Inc.),* 923 F.2d 641, 645 (9th Cir.1991).

### C.  Background

Simply stated, the absolute priority rule mandates that superior classes either be paid in full or consent to less than full payment before junior creditors receive any distribution on account of ownership. The "new value" exception is a judicially created equitable doctrine, which provides an exception to the absolute priority rule. In brief, the "new value" exception allows the owners of the bankruptcy entity to obtain an ownership interest in the reorganized entity, even though all creditors were not fully paid, if they inserted new value into the business.[2]

In 1978 Congress enacted the Bankruptcy Code. Although the Bankruptcy Code codified the absolute priority rule, it did not explicitly include the new value exception. 11 U.S.C. § 1129(b)(2).

### D.  The New Value Exception Existed Under the Bankruptcy Act of 1898

The Court must first determine whether the "new value" exception ever existed.

Appellee Prudential asserts the "new value" exception "probably never existed under the Bankruptcy Act." This assertion is incorrect. The Court finds that the new value exception existed prior to the enactment of the 1978 Code.

The Bankruptcy Act ("the Act") of 1898 required plans of reorganization to be "fair and equitable," although it failed to define that phrase. *Kham & Nate's Shoes No. 2 v. First Bank,* 908 F.2d 1351, 1360 (7th Cir.1990). Under the Act a plan could not be confirmed unless it satisfied the "fair and equitable" test, or the creditors unanimously consented to the plan. The "new value" exception came into being as the Court recognized the necessity for some flexibility in the application of the absolute priority rule. *Id.*

The Supreme Court first recognized the necessity for the infusion of new value into the estate by the equity owners in *Kansas City Terminal R. Co. v. Central Union Trust Co.,* 271 U.S. 445, 46 S.Ct. 549, 70 L.Ed. 1028 (1926). In *Kansas City Terminal Railway* the Court stated,

> [G]enerally additional funds will be essential to the success of the undertaking [reorganization], and it may be impossible to obtain them unless stockholders are permitted to contribute and retain an interest sufficiently valuable to move them. In such or similar cases, the chancellor may exercise an informed discretion concerning the practical adjustment of the several rights.

In a subsequent Supreme Court case *Case v. Los Angeles Lumber Products Co.,* 308 U.S. 106, 60 S.Ct. 1, 84 L.Ed. 110 (1939), the Court relied on *Kansas City Terminal Railway* in expanding the "new value" exception. In *Case* the Supreme Court defined the "new value" exception as follows:

---

2. Professor Warren, who submitted an *amicus curiae* brief on this issue, suggests that the "new value" exception has been incorrectly titled because it is not really an exception, but instead merely provides old equity the opportunity to participate in the reorganized plan if it offers to purchase equitable ownership. 11 U.S.C.

§ 1123(a)(5)(D). In effect, that the "new value" exception does not violate the absolute priority rule because old equity only receives an ownership interest that is comparable to the amount of new capital they have infused into the reorganized business.

[T]here are circumstances under which stockholders may participate in a plan of reorganization of an insolvent debtor.... Especially in [*Kansas City Terminal Railway* ] did this Court stress the necessity, at times, of seeking new money "essential to the success of the undertaking" from the old stockholders. Where that necessity exists and the old stockholders make a fresh contribution and receive in return a participation reasonably equivalent to their contribution, no objection can be made.

*Id.* at 121, 60 S.Ct. at 10.

The *Case* Court developed what is commonly referred to today as the "new value" exception. This doctrine was created to rectify problems that arose from the strict application of the absolute priority rule. *Id.* Although Prudential disputes the existence of a "new value" exception prior to the Bankruptcy Code, this doctrine was recognized by the Supreme Court as well as other courts. *See Kham & Nate's Shoes No. 2 v. First Bank*, 908 F.2d 1351 (7th Cir.1990) (wherein the court discusses the history of the "new value" exception).

### E. *The New Value Exception Under the 1978 Bankruptcy Code*

Having determined that a "new value" exception did exist, the Court must decide whether it survived the enactment of the 1978 Bankruptcy Code ("the Code"), specifically § 1129 of the Code.

Throughout history the "new value" exception has been necessitated by the application of the absolute priority rule. The absolute priority rule is codified in Title 11 U.S.C. § 1129. Section 1129 deals with confirmation of a debtor's plan. Specifically, § 1129(2) provides,

[F]or the purpose of this subsection, the condition that a plan be fair and equitable with respect to a class includes the following requirements:

(B) With respect to a class of unsecured claims—

(i) the plan provides that each holder of a claim of such class receive or retain on account of such claim property of a value, as of the effective date of the plan, equal to the allowed amount of such claim; or

(ii) the holder of any claim or interest that is junior to the claims of such class will not receive or retain on account of such junior claim or interest any property.

Section 1129 codifies the term "fair and equitable." Confirmation of a Chapter 11 reorganization plan under the Code requires that all impaired classes of claims must accept the plan. If all classes accept the plan, the plan need not satisfy the absolute priority rule. If all classes do not vote to accept the plan, it generally must satisfy the absolute priority rule. It is clear from the language of § 1129(b)(2) that the holder of any claim junior to the claims of the dissenting class will not receive any equity under the plan *on account of* such junior claim. Notwithstanding this provision, some courts have held that the Code leaves open the question of whether equity holders can receive property on account of an infusion of fresh capital. *In re Bjolmes Realty Trust*, 134 B.R. 1000 (Bankr.D.Mass.1991); *In re Creekside Landing, Ltd.*, 140 B.R. 713, 717 (Bankr. M.D.Tenn.1992).

It is noteworthy that the Code does not mention the "new value" exception. As will be discussed hereinafter, parties who support the continuing viability of the "new value" exception cite Congress' omission as an indication that Congress intended to leave the doctrine as it stands; while parties who argue there is no "new value" exception cite this omission as an indication that Congress intended to abolish it.

A recent Supreme Court case has called into question the continued validity of the "new value" exception. *Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 108 S.Ct. 963, 99 L.Ed.2d 169 (1988).[3] The Supreme Court in *Ahlers* was confronted with the argument that adoption of the Code eliminated the "new value" exception. The

---

**3.** Most of the case law that questions the continuing viability of the "new value" exception has occurred in response to this Supreme Court case.

Court failed to resolve the issue. Instead the Court held that even if the "new value" exception survived the 1978 enactment of the Code, respondents' proposed contribution was inadequate to allow its application. This "hotly contested" issue arises in direct response to a footnote in which the Supreme Court stated,

> [T]he United States, as amicus curiae, urges us to reverse the Court of Appeals ruling and hold that codification of the absolute priority rule has eliminated any 'exception' to that rule suggested by *Los Angeles Lumber....* Relying on the statutory language and the legislative history, the Solicitor General argues that the 1978 Bankruptcy Code "dropped the infusion-of-new-capital exception to the absolute priority rule."
>
> We need not reach this question to resolve the instant dispute....

*Id.* at 203 n. 3, 108 S.Ct. at 967 n. 3.[4]

Subsequent to *Ahlers* a number of courts have questioned the continued viability of the "new value" exception. They argue that Congress rejected this exception by failing to include any reference to it in the Code. In *Kham & Nate's Shoes No. 2 v. First Bank,* 908 F.2d 1351 (7th Cir.1990), the Seventh Circuit questioned the validity of the "new value" exception. The court stated the argument against the "new value" exception as follows:

> [E]verything changed with the adoption of the Code in 1978. The definition of "fair and equitable" is no longer a matter of common law; § 1129(b)(2) defines it expressly. Holdouts that spoiled reorganizations and created much of the motive for having judges "sell" stock to the manager-shareholders no longer are of much concern, now that § 1126(c) allows the majority of each class (two-thirds by

value) to give consent.... Whether the "new value exception" to the absolute priority rule survived the codification of [the Bankruptcy Code] is a question open in this circuit. [citations omitted] The language of the Code strongly suggests that it did not, and we are to take this language seriously even when it alters pre-Code practices.

*Id.* at 1361. Similar to the Supreme Court in *Ahlers,* the court in *Kham & Nate's* did not hold that the "new value" exception vanished in 1978, but instead found that the debtor had failed to propose the infusion of what would constitute new value. *See also Matter of Stegall,* 865 F.2d 140, 142–143 (7th Cir.1989) (questioning the validity of the "new value" exception, but failing to resolve the issue).[5]

Although a number of courts have questioned the continuing validity of the "new value" exception, other courts have reasoned that Congress' silence on the issue indicates that the doctrine is still valid. In *In re Greystone III Joint Venture,* 102 B.R. 560, 575 n. 3 (Bankr.W.D.Tex.1989) the court stated that when Congress reenacts a statute that was subject to a widely accepted judicial principal, it adopts that principal unless it makes its intent to eliminate the principal clear.[6] *See also, In re Snyder,* 99 B.R. 885 (Bankr.C.D.Ill.1989).

F.A.B. directs the Court to the Supreme Court holding in *Midlantic Nat'l Bank v. New Jersey Dept. of Environmental Protection,* 474 U.S. 494, 501, 106 S.Ct. 755, 759, 88 L.Ed.2d 859 (1986) which provides, *inter alia,*

> [I]f Congress intends for legislation to change the interpretation of a judicially created concept, it makes that intent specific. The Court has followed this rule

---

**4.** In *Ahlers* the Supreme Court reversed an Eighth Circuit ruling confirming a reorganization plan based on the finding that the "new value" contributed by the debtor did not meet the requirements of the new value exception.

**5.** It is arguable that the provisions of the 1978 Code eliminated the pre-existing inflexibility of the rule in *Los Angeles Lumber.* Prior to the enactment of the Code, a plan could not be confirmed, even with the consent of each class of creditors, unless it complied with the abso-

lute priority rule, and it was in the context of that inflexible rule discussed in *Los Angeles Lumber.* Under the Code if each class of unsecured creditors accepts the plan, the debtor need not satisfy the absolute priority rule.

**6.** The court held that "[t]he Bankruptcy Code did not repudiate *Case,* so the longstanding equitable expansion of the absolute priority rule should be presumed to still be good law." *Id.*

with particular care in construing the scope of bankruptcy codification.

In further support of this principal, the Supreme Court recently stated in a case involving statutory construction,

> [S]uch a major change in the existing rules would not likely have been made without specific provision in the text of the statute; it is most improbable that it would have been made without even mention in the legislative history.

*United Savings Assn. v. Timbers of Inwood Forest,* 484 U.S. 365, 380, 108 S.Ct. 626, 635, 98 L.Ed.2d 740 (1988).[7] *See also Dewshap v. Timm,* — U.S. —, —, 112 S.Ct. 773, 779, 116 L.Ed.2d 903 (1992) (when Congress amends bankruptcy laws it does not write on a "clean slate").

As discussed above the "new value" exception was an established principal when Congress drafted the 1978 Bankruptcy Code. Pursuant to the holdings in *Midlantic Nat'l* and *United Savings* it is clear that silence in the Bankruptcy Code does not invalidate a prior judicially created concept.[8]

Prudential argues that the "new value" exception existed merely in dicta, and thus did not constitute a rule of law that would require a holding that it survived the Code. The problem with this argument is that this doctrine, although rarely applied, has been recognized and discussed in numerous opinions, including three Supreme Court opinions referred to herein.[9]

Notwithstanding this rationale there are other courts which have interpreted Congress' silence as an indication that Congress intended to eliminate the "new value" exception. In *In re Drimmel,* 108 B.R. 284, 289 (Bankr.D.Kan.1989), the court focused on Congress' failure to include the "new value" exception in § 1129(b)(2)(B):

> [T]his court views Congress' failure to include the exception in this new definition as the significant factor here rather than its failure to expressly repudiate the exception.

There are courts which have upheld the "new value" exception on other grounds.[10] Pursuant to § 1129(b)(2) the holder of any claim junior to the claims of the dissenting class will not receive any equity under the plan *on account of* such junior claim. However, the Code appears to leave open the question of whether equity holders can receive property on account of an infusion of fresh capital. There is a line of authority wherein courts have found this logic persuasive and have held that "[R]eceipt or retention of stock in consideration of a fresh capital contribution may be considered to be 'on account of' the contribution and not the pre-existing stock interest." *In re Bjolmes Realty Trust,* 134 B.R. 1000, 1006 (Bankr.D.Mass.1991).

According to Professor Elizabeth Warren, who filed an amicus brief on this issue,[11]

> "[T]he 'exception' is a judicially created rule to deal with the circumstances under which old equity can participate in a new plan of reorganization. Nothing in the 'new value exception' creates an exception to the rule articulated in the Code in § 1129(b)(2)(B)(ii).... The 'new value

---

**7.** The *Timbers* Court is referring to the interpretation of § 326(d)(1) and its effect on doctrine created by the courts under the Bankruptcy Act.

**8.** Other courts have followed this logic. *See In re SLC Ltd.,* 137 B.R. 847, 852–853 (Bankr. D.Utah 1992); *In re Sovereign Group* 142 B.R. 702, 706.

**9.** *See Kansas City Terminal R. Co. v. Central Union Trust Co.,* 271 U.S. 445, 46 S.Ct. 549, 70 L.Ed. 1028 (1926); *Case v. Los Angeles Lumber Products Co.,* 308 U.S. 106, 60 S.Ct. 1, 84 L.Ed. 110 (1938); and, *Norwest Bank Worthington v. Ahlers,* 485 U.S. 197, 108 S.Ct. 963, 99 L.Ed.2d 169 (1988).

**10.** *See In re Bjolmes Realty Trust,* 134 B.R. 1000 (Bankr.D.Mass.1991); *In re Creekside Landing, Ltd.,* 140 B.R. 713, 717 (Bankr.M.D.Tenn.1992); and, *In re Montgomery Court Apartments of Ingham County, Ltd.,* 141 B.R. 324 (Bankr.S.D.Ohio 1992).

**11.** The Court granted Professor Warren leave to file an amicus brief on this issue. Professor Warren is a professor of commercial law at the University of Pennsylvania Law School. Warren asserts that her interest in this action is merely academic. Warren has recently presented a paper to the National Conference of Bankruptcy Judges on the issue raised in this appeal.

exception' only controls how old equity can participate in the post-bankruptcy company—something not restricted anywhere in the Code."

In *In re Green* 98 B.R. 981, 982 (9th Cir.BAP 1988) the court recognized the "new value" exception. The court stated, "[a]lthough there is a recognized exception to the 'absolute priority rule' in instances where the junior class provides the estate with 'money or money's worth' under the plan, the mere promise of future services is alone sufficient." *Id.*[12] *See also In re U.S. Truck Co.*, 800 F.2d 581, 588 (6th Cir.1986) (applying the "new value" exception without discussion).

In *In re Blankemeyer*, 861 F.2d 192 (8th Cir.1988), although the court did not explicitly discuss the "new value" exception, it implied that it was a viable doctrine. If the debtor's plan provides for equity to retain an ownership interest in debtor without paying dissenting creditors in full the "junior class [was required to show that it] contributed something reasonable compensatory and measurable to the reorganization enterprise." *Id.* at 194.

An analysis of the relevant case law indicates that the "new value" exception, although rarely applied, is a valid existing doctrine.[13]

Case law that has upheld the validity of the "new value" exception has found it to have the following requirements: the new value must be (1) new,[14] (2) necessary for an effective reorganization, (3) reasonably equivalent to the interest being received, (4) substantial, and (5) in money or money's worth. *See, e.g. In re Triple R. Holdings,*

*L.P.,* 134 B.R. 382 (Bankr.N.D.Cal.1991). These requirements give the reviewing court the opportunity to review the fairness of the proposed deal between the creditors and the owners of the bankruptcy entity.

Prudential correctly calls the Court's attention to the rarity with which the "new value" exception is actually applied. It is clear from the discussion of the cases cited *supra* only a few courts have confirmed plans under the "new value" exception. Nonetheless, it remains a valid doctrine.

### III. CONCLUSION

Based on case law establishing the "new value" exception under the Bankruptcy Act of 1898, and the absence of Congressional intent to abolish this exception, the Court finds that the "new value" exception survived the enactment of the Bankruptcy Code and as such remains valid law. The order of the bankruptcy court is reversed and the matter remanded for disposition in accordance with the terms of this Memorandum and Order.

IT IS HEREBY ORDERED.

**12.** The bankruptcy court's order confirming the plan was reversed because under the holding in *Ahlers* promises of future services was not enough.

**13.** In addition, commentator's have argued that the "new value" exception is still valid. One policy in favor of the "new value" exception is set forth by Professor Raymond Nimmer as follows:

[T]he owners ... are a source of capital different in kind from new investors in that they have an ongoing role in the reorganization and a prior investment in the company. The new value concept is a loss allocation rule. Permitting a new capital contribution as a

way to continue ownership not only permits the new investment, but also gives the owners an additional tool with which to negotiate a plan. *The owners' increased influence is based on their willingness to increase their risk.*

Nimmer, Negotiated Bankruptcy Reorganization Plans: Absolute Priority and New Value Contributions, 36 EMORY L.J. 1009, 1050 (1987).

**14.** This repeats the requirement of § 1129(b)(2)(B)(ii) that old equity cannot take an interest on account of its previous ownership interest.